| | |
|---|---|
| Bret A. Stone | SBN 190161 BStone@PaladinLaw.com |
| Brian R. Paget | SBN 168694 BPaget@PaladinLaw.com |
| Melanie A. Mariotti | SBN 309000 MMariotti@PaladinLaw.com |

PALADIN LAW GROUP® LLP
220 W. Gutierrez Street
Santa Barbara, CA 93101
Telephone: (805) 898-9700
Facsimile: (805) 852-2495

Special Assistant City Attorneys
for the City of West Sacramento

Counsel for City of West Sacramento

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARROWOOD INDEMNITY COMPANY, a Delaware corporation, formerly known as ROYAL INSURANCE COMPANY OF AMERICA, and successor to ROYAL GLOBE INSURANCE COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>CITY OF WEST SACRAMENTO; and ROES 1-50, inclusive,<br><br>*Defendant*. | Case No. 2:21-CV-00397-WBS-JDP<br><br>COUNTERCLAIM OF CITY OF WEST SACRAMENTO |
| CITY OF WEST SACRAMENTO,<br><br>*Counter-Claimant*,<br><br>v.<br><br>ARROWOOD INDEMNITY COMPANY, a Delaware corporation, formerly known as ROYAL INSURANCE COMPANY OF AMERICA, and successor to ROYAL GLOBE INSURANCE COMPANY,<br><br>*Counter-Defendant*. | |



The City of West Sacramento, California ("City") brings this action, and allege upon knowledge as to its own acts, and upon information and belief as to the acts of all others, as follows:

**JURISDICTION**

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as all parties are citizens of different states and the amount in controversy exceeds $75,000.

2. Arrowood Indemnity Company, formerly known as Royal Insurance Company of America ("Royal"), as successor to Royal Globe Insurance Company ("Royal Globe"), ("Arrowood") has its headquarters in North Carolina and is incorporated in Delaware.

3. The City of West Sacramento is a municipality located in the State of California.

**NATURE OF THE ACTION**

4. The City brings this action to enforce a judgment against the insurance assets of the defendants of a previous litigation in this Court. The R&L Action was an environmental enforcement action against prior owners and operators of a plating facility and can be found at *City of W. Sacramento v. R & L Bus. Mgmt.*, No. 2:18-cv-00900 WBS EFB (E.D. Cal. 2018).

5. The relevant defendants of the R&L Action were R and L Business Management, Inc. formerly known as Stockton Plating, Inc. ("R&L"), John Clark, and the Estate of Nick Smith, Deceased ("Smith") (collectively, "R&L Defendants").

6. In the R&L Action, the City reached a Stipulated Judgment with the R&L Defendants and Arrowood.

7. In the R&L Action, the City entered into a Settlement Agreement with the R&L Defendants and Arrowood.

**PARTIES**

*Counterclaimant*

8. The City of West Sacramento is a political subdivision of the State of California, specifically a municipality. It was the plaintiff in the R&L Action.

*Counter-Defendant*

9. Arrowood is an insurance company that issued insurance policies to the R&L Defendants.



**VENUE**

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) as the contaminated real property and the surrounding areas are located in West Sacramento, California.

**GENERAL ALLEGATIONS**

*The Site*

11. The Site is comprised of the Property located at 319 3rd Street, West Sacramento, California and the area around and in the vicinity of the Property that has been, or is threatened with being, impacted by the environmental contamination at issue in this litigation.

12. The address of the Property was previously 319 3rd Street, Broderick, California.

*Insurance Policies*

13. Royal Globe issued policy no. PYA920360 to named insureds Stockton Plating, Inc. and Nich [sic] J. Smith for the policy period April 1, 1976 to April 1, 1979. A true and correct copy of the policy as produced by Arrowood in this litigation is attached as EXHIBIT 1.

14. Royal Globe issued policy no. PYA154515 to named insureds Stockton Plating, Inc. and Nick J. Smith for the policy period April 1, 1979 to April 1, 1982. A true and correct copy of the policy as produced by Arrowood in this litigation is attached as EXHIBIT 2.

15. Royal issued policy no. PYA265377 to named insureds Stockton Plating, Inc. and Nick J. Smith for the policy period April 1, 1979 to April 1, 1982. A true and correct copy of the policy as produced by Arrowood in this litigation is attached as EXHIBIT 3.

16. Royal issued policy no. PYA300207 to named insureds Stockton Plating, Inc. and Nick J. Smith for the policy period April 1, 1985 to April 1, 1986. A true and correct copy of the policy as produced by Arrowood in this litigation is attached as EXHIBIT 4 (collectively, all the policies are the "Insurance Policies").

17. Each of the identified policies has a $500,000 per occurrence limit and a $500,000 annual aggregate limit.

18. As there are ten years of policies, there is a total of $5 million in policy limits.

19. The applicable comprehensive general liability policy language of the Insurance Policies states: "The company will pay on behalf of the insured all sums which the insured shall



1 become legally obligated to pay as damages because of A. bodily injury or B. property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements."

20. The persons insured include the organization identified in the Insurance Policies as a named insured and any executive officer, director or stockholder thereof while acting within the scope of his duties as such in addition to any additional named insureds.

21. Stockton Plating, Inc. is a named insured for the Insurance Policies.

22. Nick J. Smith is a named insured for the Insurance Policies.

23. John Clark was an officer and director of Stockton Plating, Inc. as well as the general manager of the plating facility at the Site.

24. John Clark is a person insured for the Insurance Policies.

25. The three-year policies contain a provision stating, "If this policy is issued for a period of three years any limit of the company's liability stated in this policy as 'aggregate' shall apply separately to each consecutive annual period thereof."

26. The Insurance Policies contain a qualified pollution exclusion: "This insurance does not apply: … (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic substances, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental; …"

27. The qualified pollution exclusion does not exclude coverage for pollution of groundwater as groundwater is not a "watercourse" or a "body of water."

///



28. The Insurance Policies contain a supplementary payments provision: "The company will pay, in addition to the applicable limit of liability: (a) all expenses incurred by the company, all costs taxed against the insured in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon …."

*** The R&L Action ***

29. Arrowood provided a defense to John Clark in the R&L Action.

30. Arrowood provided a defense to R and L Business Management in the R&L Action.

31. The Estate of Nick Smith, Deceased, was sued pursuant to Cal. Prob. Code §§ 550-555 in the R&L Action and therefore was only sued to the extent of applicable insurance assets. As such, Smith was a nominal defendant while Arrowood was the real party in interest.

32. Arrowood defended Smith in order to protect its own interests as the insurer that issued the Insurance Policies to Nick Smith.

33. In the R&L Action, the City reached a Stipulated Judgment with the R&L Defendants and Arrowood after negotiations with Arrowood. A true and correct copy of the Stipulated Judgment, including the exhibits thereto, is attached as EXHIBIT 5.

34. Arrowood is a signatory to the Stipulated Judgment.

35. Arrowood is bound by the Stipulated Judgment after having notice and opportunity to participate in the negotiations and drafting of the Stipulated Judgement.

36. Arrowood is bound by the Stipulated Judgment having participated in the negotiation and drafting of, and having approved, the Stipulated Judgment.

37. "'A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party.'" *Meleski v. Estate of Albert Hotlen*, 29 Cal. App. 5th 616, 625 (2018) (citing Rest.2d Judgments, § 39.).

38. Arrowood is further bound by the Stipulated Judgment as it controlled Smith's defense.



39. The fees and costs that Arrowood agreed to pay in the Stipulated Judgment are costs taxed against the insured under the supplementary payments.

40. The City made a settlement offer within policy limits to Arrowood and its insureds in December 2019.

41. Arrowood did not accept the December 2019 settlement offer.

42. The City made another settlement offer within policy limits to Arrowood and its insureds in September 2020.

43. Arrowood did not accept the September 2020 settlement offer.

44. Arrowood's failure to accept a reasonable settlement offer within policy limits has made Arrowood liable for the entire judgment against its insureds, even though it exceeds policy limits. *See Communale v. Traders & General Ins. Co*., 50 Cal.2d 654, 661 (1958).

45. Arrowood contends that the Insurance Policies do not provide coverage for the Stipulated Judgment because of one or more exclusions in those policies, including the qualified pollution exclusion.

46. Arrowood contends that it has no obligation to pay the attorneys' fees and costs awarded against its insureds in favor of the City as set forth in the Stipulated Judgment and that the Insurance Policies do not provide coverage for such fees and costs because of one or more exclusions in those policies, including the qualified pollution exclusion.

### *Facts Established in the R&L Action*

47. The contamination originates from the Property and has migrated and is migrating in the soil and groundwater to areas off-Property, creating an ever-growing plume of contamination at the Site.

48. The Capitol Plating facility primarily recycled and re-plated damaged chrome bumpers.

49. The process consisted of straightening, grinding, and polishing the damaged parts of the bumper.

50. Particulates of chromium, nickel, and copper were released to the air as part of the grinding and polishing process.



51. Those particulates were gathered by a dust collector fan system or by being swept up.

52. The swept up particulates were placed in the dumpster located in the southwestern area of the Property.

53. There is a significant area of contamination associated with the location of the dumpster at the Property.

54. The release of the metal particulates was sudden and accidental and were a substantial contribution to the contamination at the Site.

55. The surface of the bumper would be buffed after each plating operation and after the finish coat.

56. Each cycle involved the bumper being placed in a different tank of metal solution: first, copper; then, nickel; last, chromium.

57. For the plating and washing cycles, a worker would manually lift the bumpers, and move the bumpers between tanks containing either chemicals or plain water.

58. The worker accomplished this by using two hooked rods to hook onto the bumper and leverage it in and out of the tank.

59. The bumper would be placed into a tank containing a metal solution and an electrical current would be applied to the tank.

60. The worker would then lift the bumper from the tank and move it to the next tank in the process.

61. Due to the height of the tanks, an elevated duckboard floor was built so the workers could stand in the optimal position to lift bumpers out of and lower bumpers into the tanks.

62. Duckboard consisted of two-by-fours with half-inch spacers set in a grid pattern on the floor to create an elevated platform approximately three feet high for the workers to walk on around the tank.

63. Any overflow from the tanks would fall through the duckboard to a floor drain connected to the sewer system.

///

64. Overflow could result, for example, from bumper bolt holes holding liquid on the bumper's way out of the liquid and releasing it once the bumper was out of the liquid.

65. The duckboard would get slippery with the water from the plating tanks.

66. The platers could then slip and drop the bumpers causing the contents of the tank to splash outside of the tank.

67. If the floor drain was unable to handle the volume of fluid, the plating fluids would flow out of the building through a hole in the wall or through the back door where they would spill out onto the ground outside.

68. When Clark started as the general manager of the Capitol Plating facility in March 1973, he noticed that the ground outside the hole in the wall was colored blue, which suggests that acidic copper was present.

69. To prevent the solutions used in the metal plating process from escaping the building, Clark covered the hole in the wall with a packed dirt dam.

70. The dirt dam failed numerous times.

71. When the dirt dam broke, rinse water and plating fluids were released.

72. These releases were sudden and accidental and were a substantial contribution to the contamination at the Site.

73. After the dirt dam failed five to ten times, Clark replaced the dirt dam with a concrete wall to stop rinse water and plating fluids from exiting the facility.

74. The concrete foundation for the wall was completed sometime in the winter of 1973 to 1974 and the wall was completed a few months after that.

75. Both the sanitary sewer drain and the pit were located within the retaining wall.

76. Any releases from the sanitary sewer were sudden and accidental and were a substantial contribution to the contamination at the Site.

77. Any releases from the pit were sudden and accidental and were a substantial contribution to the contamination at the Site.

78. The plating shop suffered two fires, one in 1973 and the other in 1985.

///



79. Both fires were put out by the local fire department using hoses and water in a sufficient amount that the plating solutions were diluted.

80. Those fires occurred in the grinding and polishing departments of the plating facility and completely destroyed those parts of the building where there was metallic dust.

81. The fires created sudden and accidental releases of hazardous substances which were substantial contributors to the contamination at the Site.

82. A major rain event brought 10 inches of rain to the Sacramento area in February 1986.

83. Although, plating operations stopped in May 1985 after the second fire, Stockton Plating, Inc. did not complete the removal of its equipment and chemicals from the Property until October 1986.

84. The major rain event is a sudden and accidental event which substantially contributed to the contamination at the Site.

85. Stockton Plating, Inc. used the Property for storage of bumpers until 1991. No business has operated at the Property since then.

86. The soil contamination at the Property extends off-Property.

87. The soil at and adjacent to the Property is contaminated with hazardous substances including nickel, copper, chromium, lead, and cadmium.

88. The groundwater at and emanating from the Property is contaminated with nickel, copper, chromium, cadmium, 1,2 DCA and other hazardous substances.

89. Each and every discharge, release, escape, spill, fire, and rain event as identified above is a separate occurrence for purposes of determining insurance coverage.

90. Each and every discharge, release, escape, spill, fire, and rain event as identified above was a substantial contribution to the contamination at the Site.

91. R&L's conduct was a substantial factor in causing the contamination at the Site.

92. Clark's conduct was a substantial factor in causing the contamination at the Site.

93. Smith's conduct was a substantial factor in causing the contamination at the Site.

///



## FIRST CAUSE OF ACTION

### Judgment Creditor Action pursuant to Cal. Ins. Code § 11580

94. The City realleges and incorporates by reference all allegations set forth above as though set forth in full herein.

95. The City brought an action for property damage, specifically the environmental contamination at and emanating from the Property, against the R&L Defendants.

96. Judgment was entered against the R&L Defendants.

97. R&L Defendants' liability under the judgment is covered by the Insurance Policies issued by Arrowood.

98. The liability for the fees and costs assessed in the judgment exists regardless of coverage.

99. None of the policy exclusions in the Arrowood insurance policies apply.

## PRAYER FOR RELIEF

WHEREFORE, the City requests that judgment be entered in its favor for the following:

1. For a declaration that the Arrowood Insurance Policies cover the liability against its insureds arising from the Stipulated Judgment;

2. For a declaration that the Arrowood Insurance Policies have an aggregate limit of $5 million;

3. For a declaration that the Arrowood Insurance Policies effectively have no policy limits because of Arrowood's failure to accept a reasonable settlement offer within policy limits;

4. For an order requiring Arrowood to undertake all actions to investigate, cleanup, and remediate the Site in compliance with and consistent with the Stipulated Judgment;

5. For an order requiring Arrowood to pay the fees and costs awarded against its insured in favor of the City in the R&L Action;

6. For an award to the City for its costs of litigation, including attorneys' fees and expert witness fees, as such costs were incurred while enforcing a judgment of attorneys' fees and costs pursuant to statute per Cal. Civ. Proc. Code § 685.040;

7. For prejudgment and post-judgment interest;



8. For all costs of suit herein;

9. For such other and further relief as this Court deems just and proper.

Dated: April 6, 2021　　　　　　　　　　　PALADIN LAW GROUP® LLP

　　　　　　　　　　　　　　　　By:　/s/ *Bret A. Stone*
　　　　　　　　　　　　　　　　　　　Bret A. Stone

　　　　　　　　　　　　　　　　Special Assistant City Attorney
　　　　　　　　　　　　　　　　for the City of West Sacramento

　　　　　　　　　　　　　　　　Counsel for City of West Sacramento

