UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ARROWOOD INDEMNITY COMPANY, a Delaware Corporation, formerly known as ROYAL INSURANCE COMPANY OF AMERICA, and successor to ROYAL GLOBE INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>CITY OF WEST SACRAMENTO; and ROES 1-50, inclusive<br><br>Defendants. | No. 2:21-cv-00397 WBS JDP<br><br>ORDER RE: CITY OF WEST SACRAMENTO'S MOTION TO DISMISS |

----oo0oo----

This is an insurance coverage dispute concerning whether plaintiff Arrowood Indemnity Company ("Arrowood") has an obligation, under its duty to indemnify, to pay a Stipulated Judgment against its insureds in a related action, City of West Sacrament v. R and L Business Management, No. 2:18-cv-900-WBS-JDP (the "R&L Action"). Defendant City of West Sacramento ("the

1

City") now moves to dismiss for failure to state a claim upon which relief may be granted. (See Mot. to Dismiss (Docket No. 11).)

I.  Factual Background

In the R&L Action, the City of West Sacramento filed an environmental enforcement action against R and L Business Management ("R&L") as the successor in interest to Stockton Plating, Inc., John Clark, and the Estate of Nick Smith, Deceased[1] (collectively, "the R&L defendants"), among others, to address environmental contamination at and emanating from 319 3rd St., West Sacramento, California (the "Site"). (First Amended Complaint ("FAC") ¶ 13 (Docket No. 9).) In the course of the litigation, the court granted two largely undisputed motions for summary judgment against the R&L defendants, and, after holding a three-day evidentiary hearing (the "Divisibility Hearing"), determined that they were each jointly and severally liable for the contamination at the Site under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") § 107(a). (FAC, Ex. E ("Stipulated Judgment") (Docket No. 9-5).)

    A.   Arrowood's Insurance Policies and Defense of the R&L Defendants

Arrowood--the R&L defendants' insurer--defended the R&L defendants subject to a reservation of rights throughout the

---

[1] The City sued the Estate of Nick Smith pursuant to California Probate Code §§ 550-555, which permits an action to establish a decedent's liability for which the decedent was protected by insurance to be commenced or continued against the decedent's estate without the need to join the decedent's personal representative or successor in interest as a party.

action because of four insurance policies it and its predecessor had issued to R&L and Smith between 1976 and 1986 (the "Arrowood Policies").[2]  (FAC ¶ 18.)  These policies provided comprehensive general liability insurance for damage to property, subject to several exclusions.  (See FAC ¶ 10.)  Two exclusions are applicable to this case: the "Pollution Exclusion" and the "Owned Property Exclusion."  (See id.)  The Pollution Exclusion states that "this insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of . . . contaminants or pollutants into or upon land."  (Id.)  This exclusion is subject to an exception, however, for discharges that are "sudden and accidental" (the "Sudden and Accidental Exception").  (Id.)

The Owned Property Exclusion states that no coverage exists for

> property damage to
>
> (1)  property owned or occupied by or rented to the insured;
>
> (2)  property used by the insured; or
>
> (3)  property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control.

(Id.)

In other words, Arrowood's policies generally do not provide coverage for property damage occurring due to the release of environmental pollutants.  (See id.)  If it is determined, however, that those releases were "sudden and

---

[2]  Each of these policies also covered officers and directors of R&L, which included Clark.  (FAC ¶¶ 6-9, 15-17, 19.)

accidental," and that property not owned, possessed, or used by the R&L defendants was damaged, coverage exists and Arrowood owes the R&L defendants a duty to indemnify.  (See id.)

B.   The Settlement Agreement and Stipulated Judgment

On March 3, 2021, the City, the R&L defendants, and Arrowood entered into a settlement agreement, which included a covenant to request that the court enter a stipulated judgment against the R&L defendants (the "Stipulated Judgment").  (See FAC, Ex. F at 2-14 ("Settlement Agreement").)  The City agreed not to execute the judgment against the R&L defendants.  Instead, the City agreed to only execute the judgment against Arrowood pursuant to California Insurance Code § 11580, which permits judgment creditors to bring an action against an insurer to recover on a judgment against its insured, subject to the policy's terms and limitations.  See (id.); Cal. Ins. Code § 11580(b)(2).

Pursuant to the Settlement Agreement, Arrowood agreed to reimburse the City for its past response costs in the amount of $125,627.90, and to complete site investigation to the satisfaction of the California Department of Toxic Substances Control ("DTSC").  (Settlement Agreement at 2.)  Arrowood also agreed to fund remediation of the site, as indemnity, but only if the City, as a judgment creditor under the Stipulated Judgment, prevails and obtains a final, non-appealable judgment in an action brought under California Insurance Code § 11580.  (Id. at 5-6.)

On March 10, 2021, the court entered the Stipulated Judgment against the R&L defendants in favor of the City.  (See

4

FAC, Ex. F at 16-139 ("Stipulated Judgment").)  The Stipulated Judgment attaches and incorporates the court's rulings on the City's motions for summary judgment and its Order Denying Defendants' Request for a Finding of Divisibility under CERCLA (the "Divisibility Order"), and finds that the City is entitled to judgment on its claims against the R&L defendants under CERCLA, the Carpenter-Presley-Tanner Hazardous Substance Account Act ("HSAA"), the Resource Conservation and Recovery Act ("RCRA"), the Gatto Act, the Porter-Cologne Water Quality Control Act, and California public nuisance law.  (See id. at 4.)

    C.    The Instant Action

Arrowood filed this declaratory relief action on March 3, 2021.  (See Compl. (Docket No. 1).)  While Arrowood's original complaint named R&L, John Clark, the Estate of Nick Smith, and the City of West Sacramento as defendants (see Compl. ¶¶ 5-8), Arrowood amended its complaint on March 11, 2021, naming only the City as a defendant.  (See FAC ¶ 5.)  The operative complaint seeks declarations that (1) Arrowood owes no duty to satisfy the Stipulated Judgment on the ground that the Arrowood Policies exclude coverage for the claims alleged against the R&L defendants; and (2) even if the court finds that Arrowood has a duty to satisfy the Stipulated Judgment, the applicable limit of the Arrowood Policies is $500,000.  (See FAC at 15-17.)  Arrowood attached the Stipulated Judgment--including the prior court orders that it incorporates--to its operative complaint as an exhibit.[3]  (See FAC, Ex. F.)

---

[3] The City filed a counterclaim against Arrowood--not at issue here--on April 6, 2021, under California Insurance Code §

5

II. Discussion

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal when the plaintiff's complaint fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). The inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the complaint has stated "a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679.

The City argues that dismissal of Arrowood's first claim--that it is entitled to a declaration that it owes no duty to indemnify under the terms of the Arrowood Policies--is warranted because prior orders of the court in the R&L Action establish that neither the Pollution Exclusion nor the Owned Property Exclusion apply.[4]  (See Mot. to Dismiss at 7-10.)

---

11850.  The City claims that the R&L defendants' liability under the Stipulated Judgment is covered by the Arrowood Policies. (See City's Counterclaim (Docket No. 13).)

[4]  Although the City's Motion to Dismiss argues that "Arrowood's First Amended Complaint should be dismissed," the City's Motion focuses only on Arrowood's first claim, failing to present any argument for why dismissal is appropriate as to Arrowood's second claim that, even if the court finds that Arrowood has a duty to indemnify, the applicable limit of the

1  Because the issue of insurance coverage was not "actually
2  litigated" in the R&L Action, the City does not contend--nor
3  could it--that Arrowood is collaterally estopped from litigating
4  the <u>issue</u> of insurance coverage in this case.  See <u>Clark v. Bear</u>
5  <u>Stearns & Co., Inc.</u>, 966 F.2d 1318, 1320-21 (9th Cir. 1992).
6  Rather, the City contends that the court's <u>findings of fact</u> in
7  its two Summary Judgment orders and its Divisibility Order from
8  the R&L Action negate allegations in Arrowood's complaint that
9  the Sudden and Accidental and Owned Property Exclusions apply,
10 such that dismissal is appropriate.  See Fed. R. Civ. P.
11 12(b)(6).
12         The City points out that these orders were attached to
13 the Stipulated Judgment as exhibits and expressly incorporated
14 into the Judgment "as though stated in full," (<u>see</u> Stipulated
15 Judgment at 2-3), and that Arrowood itself attached the
16 Stipulated Judgment as an exhibit to its complaint (see FAC, Ex.
17 F).
18         As a preliminary matter, the court did not make any
19 findings of fact in its prior summary judgment Orders.  When
20 evaluating a motion for summary judgment, the court merely
21 assesses the evidence submitted by the parties to determine
22 whether a <u>genuine dispute</u> of material fact exists--that is,
23 whether a "dispute[] over facts that might affect the outcome of
24 the suit under the governing law" exists.  See Fed. R. Civ. P.
25 56; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).
26 The court does not resolve factual disputes or make findings of

---

Arrowood Policies is $500,000.  (<u>See generally</u> Mot. to Dismiss;
FAC ¶¶ 54-59.)

1  fact; factual determinations are expressly reserved for the jury
2  at trial.  See id.  There were therefore no "findings of fact" in
3  the court's prior summary judgment Orders.
4       The court's Divisibility Order is on slightly different
5  footing because that Order was issued after the court held a
6  three-day evidentiary hearing and made findings of fact.  (See
7  generally Divisibility Order.)  The court's findings, however,
8  did not concern the issue of insurance coverage--rather, the
9  court found that the R&L defendants' contribution to the
10 environmental harm at the Site was not divisible from other
11 operator's contributions.  (See Divisibility Order at 28.)  Thus,
12 while the court may consider the findings made in its
13 Divisibility Order because the Order was attached to Arrowood's
14 complaint as an exhibit, see Fed. R. Civ. P. 10(c) (a "copy of a
15 written instrument that is an exhibit to a pleading is part of
16 the pleading for all purposes"); Lee v. City of Los Angeles, 250
17 F.3d 668, 688 (9th Cir. 2001) (courts may properly consider
18 material submitted as part of the complaint on a motion to
19 dismiss without converting the motion to dismiss into a motion
20 for summary judgment), as the following analysis shows, these
21 findings certainly do not establish, as a matter of law, that the
22 Arrowood Policies provide coverage in this case.
23      Under the Arrowood Policies, Arrowood owes no duty to
24 indemnify if either the Pollution Exclusion or the Owned Property
25 Exclusion applies.  (See FAC ¶¶ 10.)  Though it is the nominal
26 defendant in this action, the City ultimately bears the burden in
27 this action of establishing that neither exclusion applies.  See
28 ABM Indus., Inc. v. Zurich Am. Ins. Co., No. C 05-3480 SBA, 2006

WL 2595944, at *12 (N.D. Cal. Sep. 11, 2006), aff'd in part sub nom. ABM Indus., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 291 F. App'x 800 (9th Cir. 2008); State of Cal. v. Allstate Ins. Co., 45 Cal. 4th 1008, 1036 (Cal. 2009) ("The insured under a third party liability policy has the burden of proving a covered act or event was a substantial cause of the injury or property damage for which the insured is liable, and this burden extends to showing the causal act or event was within an exception to a policy exclusion when the insurer has shown the exclusion applicable.").

When determining whether an event is "sudden and accidental," the court must first determine which "particular discharges or discharges . . . gave rise to [the] property damage." See Allstate, 45 Cal. 4th at 1021. The California Supreme Court has instructed that it is the "discharge, dispersal, release, or escape" of contaminants from confinement or containment into the broader environment, rather than the initial deposition of the contaminant or pollutant into confinement, that matters for purposes of the analysis. See id. Once the court has determined the discharges that are at issue, it then must evaluate each discharge separately to determine whether it was "sudden," "accidental," "non-trivial and indivisible," and a "substantial factor" in the insured's liability. See id. at 1036-37.

Arrowood identifies several categories of discharges which it alleges were not "sudden and accidental," but rather gradual, foreseeable, intentional, or trivial. (See FAC ¶¶ 27-47.) First, Arrowood alleges that releases occurred as part of

the metal plating process, when Stockton Plating employees would place bumpers into a series of tanks filled with dissolved nickel, copper, and chromium solutions.  (FAC ¶ 35.)  When employees removed bumpers from the plating solutions or from rinse tanks, fluids from the tanks and droplets of plating solution or rinse solution would fall onto the floor.  (Id.) Employees also occasionally dropped bumpers as they were removed from plating and rinse tanks, causing fluids to splash onto the ground.  (Id.)  Arrowood alleges that these "drag out" releases were an "expected and intended part" of Stockton Plating's business practice and were "virtually certain to occur from the nature of the plating operations."  (Id. at ¶ 38.)

Second, the complaint alleges that, from 1973 to 1974, Stockton Plating allowed plating rinse fluids to flow directly onto the floor in the plating area.  (Id. at ¶ 36.)  Then, in 1974, employees placed dirt and gravel on the exterior of the building to prevent fluids from exiting the building through the man-made hole.  (Id.)  These nonpermanent, permeable dirt and gravel walls eroded several times, causing plating fluids to escape, and employees to rebuild the wall with additional dirt and gravel.  (Id.)

Third, Arrowood alleges that releases occurred when Stockton Plating employees would straighten, grind, and polish bumpers on the Site, causing shavings from bumpers to fall onto the floor or to be dispersed into the air.  (FAC ¶ 34.)  The grinding and polishing room contained a collector powered by a large fan that gathered dust into a bag, and a janitor swept the grinding and polishing rooms at the end of each day, emptied the

1  dust collector bag, and placed dust and shavings into a dumpster
2  outside of the building.  (Id.)
3       Although Arrowood alleges that two fires occurred in in
4  1973 and 1985 in the grinding and polishing rooms, Arrowood
5  alleges that these fires did not result in the release of
6  contaminants or pollutants because the fires did not damage the
7  plating area, the plating tanks were covered at the end of each
8  work day, preventing the release of fluids, and the grinding and
9  polishing rooms were cleaned of their dust and metal shavings at
10 the end of each day.  (See FAC ¶¶ 41-45.)
11      The findings from the court's Divisibility Order do not
12 even come close to establishing that any of these alleged
13 discharges were "sudden and accidental."  Case law has
14 established that the term "accidental" for purposes of the sudden
15 and accidental inquiry means "an unexpected or unintended
16 discharge."  Allstate, 45 Cal. 4th at 1020.  "Sudden" means "an
17 unexpected event that is abrupt or immediate in nature," Shell
18 Oil Co. v. Winterthur Swiss Ins. Co., 12 Cal. App. 4th 715, 755
19 (1st Dist. 1993), and an "unexpected" event has further been
20 defined as one where "the insured did not know or believe that
21 the event was substantially certain or highly likely to occur,"
22 A-H Plating v. Am. Nat'l Fire Ins. Co., 57 Cal. App. 4th 427, 435
23 (2d Dist. 1997).
24      The court simply did not make any findings in its
25 Divisibility Order as to whether Stockton Plating employees knew
26 or believed that any of the discharges at issue in the case were
27 "substantially certain or highly likely" to occur.  (See
28 Stipulated Judgment, Ex. F.)  And though the court found that the

1    R&L defendants' overall contribution to the environmental harm at
2    the Site was not divisible from the contributions of other
3    operators, the court made no findings regarding whether the harm
4    caused by any particular R&L discharges could be separated from
5    the harm caused by other R&L discharges.  (See generally
6    Divisibility Order.)  The court also made no findings as to
7    whether certain releases identified by the parties, including
8    those caused by the 1973 and 1985 fires and the 1986 rain event,
9    were "trivial" or a "substantial factor" in the R&L defendants'
10   liability.  See Allstate, 45 Cal. 4th at 1036.
11         Arrowood has adequately stated a claim that it is
12   entitled to declaratory relief based on the applicability of the
13   Arrowood Policies' Pollution Exclusion.  Because the City must
14   show that both the Pollution Exclusion and the Owned Property
15   Exclusion do not apply in order to prevail, the court need not
16   reach the question of whether established facts sufficiently
17   negate Arrowood's allegations regarding the Owned Property
18   Exclusion.
19         IT IS THEREFORE ORDERED that Defendant City of West
20   Sacramento's Motion to Dismiss (Docket No. 11) be, and the same
21   hereby is, DENIED.
22   Dated:  May 4, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE