UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ARROWOOD INDEMNITY COMPANY, a Delaware corporation, formerly known as ROYAL INSURANCE COMPANY OF AMERICA, and successor to ROYAL GLOBE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF WEST SACRAMENTO; and ROES 1-50, inclusive,<br><br>Defendants. | No. 2:21-cv-00397 WBS JDP<br><br>ORDER RE: DEFENDANT CITY OF WEST SACRAMENTO'S MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S EXPERT WITNESS |

----oo0oo----

Defendant City of West Sacramento ("City") has moved to exclude the testimony of plaintiff Arrowood's expert witness, Thomas Delfino, both in connection with the pending cross motions for summary judgment and at trial. (See Mot. (Docket No. 47-1).) On December 13, 2021, the court held a hearing on the motion. As stated there, and as explained below, the court will deny the City's motion.

1

I.   Qualifications

Expert opinion evidence is admissible if, among other things, "the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education." City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1043 (9th Cir. 2014). Arrowood seeks to offer Delfino's expert testimony on the amounts of metal released during events the City argues constituted "sudden and accidental" releases, whether those releases were indeed sudden or rather were regular and gradual, and whether the amounts released were substantial compared with background levels of those metals in the surrounding environment.

Delfino is plainly qualified to testify as an expert on those subjects.  As noted in his CV and at the hearing, he has two degrees in chemical engineering, his areas of expertise include hazardous waste management and treatment system design, and his experience includes analyses of (1) system failures resulting in discharges of metals and other pollutants into soil, groundwater, and air, and (2) the presence and flows of pollutants within soil and groundwater and plans for remediation thereof.  (See Stone Decl., Ex. F, at 21-24 (Docket No. 49-2).)

Although the City notes that Delfino has not previously testified on sudden and accidental releases, (see Mot. at 5 (Docket No. 47-1); Reply at 2 (Docket No. 59)), he has testified on closely related issues.  Moreover, the City concedes that "an expert need not have testified as to a topic before giving an expert opinion on that topic."  (Id. at 3.)  The City also notes that he has not identified himself as an expert on what it claims to be "the key issue in this case: the transport of the various

contaminants into the soil and groundwater and their fate therein." (Mot. at 5 (Docket No. 47-1).) However, his testimony is about the quantities of metals released from the plating facility into the environment and the nature of those releases, not the subsequent fate or transport of those metals within the environment.

The remainder of the City's arguments about Delfino's qualifications primarily bear on the weight his testimony should be accorded by a factfinder. A district court's role in determining admissibility, however, is as "a gatekeeper, not a fact finder." Primiano v. Cook, 698 F.3d 558, 565 (9th Cir. 2010). It is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc., 738 F.3d 960, 969 (9th Cir. 2013). Accordingly, these arguments do not impact the court's conclusion that Delfino is qualified to testify as an expert in this case.

II. Reliable Principles and Methods

To the extent that the City challenges the principles and methods Delfino used in formulating his opinions, the court disagrees. At the hearing, Delfino explained that to estimate the amount of metal waste that likely escaped into the environment through channels the City identified, he relied in part on prior testimony, the City's expert's opinions, and interviews to calculate the number of bumpers processed each day, the thickness of metal plated onto those bumpers, the amount of dust released through grinding and buffing, the volume of wastewater generated through electroplating, the amount

3

wastewater released, and the concentrations of metals in that wastewater.  (See also Decl. of Stone, Ex. F, at 12-13 (Docket No. 49-2) (explaining calculations).)

He stated that he identified background concentrations of the metals already in the ground and compared those to measurements of metal contaminants at the former plant site, and he measured the volume of the individual releases the City contends were "sudden and accidental" against the overall pollution from the plant to determine those releases' significance.  (See also id. at 13-14; Decl. of Stone, Ex. E (Docket No. 47-6) (detailing data relied upon and results).) When questioned by the court, he confirmed that these methods are commonly relied upon in his field when performing such analyses.

Based on the foregoing, the court is satisfied that Delfino's opinions are based on "reliable principles and methods" and do not merit exclusion.  See Fed. R. Evid. 702(c)-(d); City of Pomona, 750 F.3d at 1043; Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589-90 (1993) (in determining admissibility of expert evidence under Federal Rule of Evidence 702, courts must evaluate method's reliability).

III. Chiang's Role

The City also argues Delfino should be excluded because the opinions in his report are primarily those of his colleague, Ken Chiang, or excessively rely on work Chiang performed.  (See Mot. at 3, 5 (Docket No. 47-1).)

"An expert may base an opinion on facts or data . . . [he] has been made aware of or personally observed."  Fed. R. Evid. 703.  An expert may receive assistance in preparing an

1  expert report but "must also substantially participate in [its]
2  preparation"; he "cannot simply peruse the work product of
3  someone else and sign the bottom of the report." BladeRoom Grp.
4  Ltd. v. Facebook, Inc., 5:15-cv-01370-EJD, 2018 WL 1611835, at *4
5  (N.D. Cal. Apr. 3, 2018) (citations omitted).  He may base his
6  opinion on data collected by colleagues and collaborate with them
7  before reaching an opinion.  See Wolkowitz v. Lerner, SA CV 07-
8  777-CAS, 2008 WL 1885770, at *4 (C.D. Cal. Apr. 21, 2008) (citing
9  Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1142 (9th
10 Cir. 1997); Scott v. Ross, 140 F.3d 1275, 1286 (9th Cir. 1998)).

11         Chiang assisted Delfino by taking notes during
12 interviews, improving the report's writing, creating interview
13 questions, creating release scenario spreadsheets, and completing
14 calculations.  (Decl. of Stone, Ex. A, Dep. of Delfino ("Delfino
15 Dep.") at 24:24-25:1-4; 23:24-25; 25:24; 139:24-140:1; 112:19.)
16 This is not a case where the expert "peruse[d] the work product
17 of someone else and sign[ed] the bottom."  BladeRoom, 2018 WL
18 1611835, at *4.

19         The extent of Chiang's involvement did not exceed the
20 scope of outside involvement other courts have allowed.  See id.;
21 Accentra Inc. v. Staples, Inc., CV 07-5862 ABC (RZx), 2010 WL
22 11459205, at *4-5 (C.D. Cal. Oct. 7, 2010).  Delfino is permitted
23 to use information Chiang provided, which the court is satisfied
24 "was of the type reasonably relied upon by experts" under similar
25 circumstances.  See U.S. v. Golden, 532 F.2d 1244, 1248 (9th Cir.
26 1976); Wolkowitz, 2008 WL 1885770, at *4.
27 IT IS THEREFORE ORDERED that the City's motion in limine to
28 exclude the testimony of Thomas Delvino from consideration on the

pending motions for summary judgment or at trial be, and the same hereby is, DENIED.

Dated:  December 17, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE